**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 11-5191**

───────────

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

JAVAAD FISHER, a/k/a Lover Butt,

          Defendant – Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  James R. Spencer, District Judge.  (3:03-cr-00394-JRS-10)

───────────

Argued:  February 1, 2013        Decided:  March 15, 2013

───────────

Before KING, SHEDD, and THACKER, Circuit Judges.

───────────

Vacated and remanded by unpublished per curiam opinion.  Judge Shedd wrote a dissenting opinion.

───────────

**ARGUED:** Elizabeth W. Hanes, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Roderick Charles Young, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Caroline S. Platt, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In December 2003, Appellant Javaad Fisher pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 (2006). Thereafter, he was sentenced to 188 months imprisonment to be followed by a five year term of supervised release. Following the completion of his term of imprisonment, Appellant was twice found to be in violation of the conditions of his supervised release. As a result, his term of supervised release was revoked twice, once in November 2010 and again in November 2011. Appellant's first revocation sentence was for a term of six months imprisonment to be followed by the remainder of his original term of supervised release. Appellant's second revocation sentence was for a term of 30 months imprisonment with no ensuing supervised release.

Appellant appeals his second revocation sentence, arguing that it was procedurally unreasonable because the district judge failed to provide an individualized explanation for the sentence. We agree. Accordingly, we vacate Appellant's revocation sentence and remand to the district court for re-sentencing.

I.

In late 2003, Appellant was indicted along with several other members of the Petersburg, Virginia-based "Third

2

Ward Gang" in the United States District Court for the Eastern District of Virginia. On December 16, 2003, Appellant pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846 (2006). On March 17, 2004, Appellant was sentenced on that conviction to 188 months imprisonment with five years of supervised release to follow.

One year later, on March 17, 2005, the Government filed a motion requesting that the district court reduce Appellant's sentence based on his substantial assistance in another prosecution. See Fed. R. Crim. P. 35. Accordingly, on April 5, 2005, the district court entered an order reducing Appellant's sentence from 188 months imprisonment to 84 months imprisonment.

Upon successful completion of his term of imprisonment, Appellant began to serve his term of supervised release on October 2, 2009. On November 1, 2010, Appellant's probation officer filed a petition alleging Appellant violated the terms of his supervised release by (1) failing to follow instructions of the probation officer; and (2) testing positive for both marijuana and cocaine. The petition recommended a revocation sentencing range of six to 12 months imprisonment

with three years of supervised release to follow and a statutory maximum sentence of 60 months imprisonment.[1]

On December 6, 2010, Appellant pleaded guilty to the alleged supervision violations. At the revocation hearing, Appellant argued for a sentence of three months imprisonment because (1) he had a documented substance abuse problem which made it difficult for him to comply with the terms of his supervised release; (2) he had successfully completed a job training program for data cabling; and (3) he had expressed interest in attending an in-patient drug treatment program.

In response, the Government argued that Appellant (1) did not actively participate in the drug treatment program; (2) denied that he had a drug problem; (3) failed to follow the probation officer's instructions by failing to find a job; and (4) had previously been accorded leniency through the Rule 35 reduction to his original sentence.

---

[1] Specifically, Appellant's original offense of conviction, conspiracy to possess with intent to distribute 50 grams or more of cocaine base, is a Class A Felony. Thus, Appellant's statutory maximum revocation sentence was 60 months imprisonment. See 18 U.S.C. § 3583(e)(3).

Additionally, Appellant's criminal history category was IV. This, coupled with the fact that all of his supervised release violations were "Grade C" violations, resulted in a sentencing range of six to 12 months imprisonment. See U.S.S.G. § 7B1.4(a).

After hearing these arguments, the district court sentenced Appellant to six months imprisonment to be followed by the remainder of his term of supervised release. In so doing, the district court indicated:

> Because of this violation, the Court will sentence Mr. Fisher to a period of incarceration of six months, and then there will – supervised release will continue following this period of incarceration. Mr. Fisher, like the prosecutor indicated, normally, you know, I would be giving you a sentence of five years instead of six months. But I'm going to give you an opportunity to try some drug treatment and see if the Probation Officer can work with you to get your problems solved. But you have to have some consequences for violating the conditions of your supervised release, and that will be the term of incarceration. As I said, following that, there will be supervised release, and we will make efforts to try to deal with your drug problem. But understand, if that doesn't work, if the Probation Officer brings you back in here, I won't have any choice but to send you to jail, and for a long time. So I'm trying to give you some opportunity.

J.A. 33-34.[2]

After Appellant served the six month term of imprisonment, his term of supervised release resumed on June 8, 2011. On November 1, 2011, Appellant's probation officer filed a second revocation petition, alleging Appellant had again violated the terms of his supervised release by (1) driving with a suspended license; (2) failing to follow the probation

---

[2] Citations to the Joint Appendix ("J.A.") refer to the Joint Appendix filed by the parties in this appeal.

officer's instructions to file periodic employment search forms; and (3) using marijuana. Again, Appellant's revocation sentencing range was six to 12 months imprisonment, this time with a statutory maximum sentence of 54 months imprisonment.[3]

On November 30, 2011, Appellant appeared before the district court and pleaded guilty to the latter two violations.[4] The Government argued that Appellant should receive the statutory maximum sentence of 54 months imprisonment. In support, the Government argued that Appellant had received several "breaks" from the court and, therefore, had exhausted all of his chances. J.A. 44. Specifically, the Government noted (1) the fact that Appellant had initially been permitted to plead guilty to a drug charge rather than the more severe racketeering charge; (2) the 50% sentence reduction Appellant received for providing substantial assistance in another investigation; and (3) the fact that Appellant received the

---

[3] Because the second round of supervision violations again involved Grade C violations, Appellant's revocation sentencing range was the same. However, because Appellant had already served six months imprisonment on the initial revocation, his statutory maximum sentence was reduced to 54 months imprisonment. See 18 U.S.C. § 3583(e)(3).

[4] Appellant had been charged with driving on a suspended license in Virginia between the first and second revocation hearings. However, prior to the second revocation hearing, the state prosecutor voluntarily dismissed that charge. Accordingly, the Government elected not to pursue it as a basis for supervised release revocation.

lowest possible Guidelines sentence for his initial supervised release violation.

In response, Appellant agreed that supervised release was not working for him but disagreed with the Government's proposed sentence. In support of a lower sentence, Appellant argued (1) his original sentence reduction was not a "break" because, to earn that reduction, he had to testify at the trial of five other defendants, placing himself and his family at risk of harm; (2) his continued inability to pass a drug test was based on his documented history of drug addiction but, at the time of the revocation, he was actively participating in a drug treatment program; (3) his alleged failure to file employment search reports was merely a technical violation because he was actively seeking a job and had obtained a handyman license; and (4) the fact that he did not have access to reliable transportation greatly impeded his job search.

Thus, Appellant argued, "a sentence of the statutory maximum doesn't reflect the conduct that he brings to this Court[,]" J.A. 46, and, therefore, he requested that the district court impose a sentence of 12 months and one day. Additionally, Appellant himself made a statement to the court, noting that, although he was still addicted to drugs, he had left his "criminal life behind" and wanted to become a good father to his young daughter. J.A. 46-47.

7

After the parties had completed their arguments, the court pronounced its sentence, stating only:

> All right, the supervised release will be revoked pursuant to [Appellant's] plea to the conduct that was alleged. And the Court will impose the following sentence: A sentence of 30 months incarceration without any supervised release to follow. I think we have done all that we can do for Mr. Fisher.

J.A. 47. Appellant timely noted an appeal.

On appeal, Appellant argues that the district court procedurally erred by failing to provide a particularized explanation for the sentence it chose. The Government disputes this contention, arguing that, in combination, the district court's statements at both of Appellant's revocation hearings made the reasons underlying the 30 month sentence sufficiently clear.

## II.

We will affirm a sentence imposed after a revocation of supervised release unless that sentence is plainly unreasonable. See United States v. Crudup, 461 F.3d 433, 439-40 (4th Cir. 2006). In making this determination, we must first determine whether the sentence is reasonable. See id. at 438. This inquiry parallels ordinary reasonableness review with some modification. See United States v. Moulden, 478 F.3d 652, 656 (4th Cir. 2007) ("This initial inquiry takes a more 'deferential appellate posture concerning issues of fact and the exercise of

8

discretion' than reasonableness review for guidelines sentences." (quoting Crudup, 461 F.3d at 439)).[5]

Only if we determine that a sentence is unreasonable do we determine whether it was "plainly so." See Moulden, 478 F.3d at 657. In making this determination, we rely "on the definition of 'plain' that we use in our 'plain' error analysis." Crudup, 461 F.3d at 439. Specifically, an error is plain where it is "'clear' or, equivalently, 'obvious.'" United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)).

Finally, even if we determine that a revocation sentence is plainly unreasonable, we will affirm the sentence if the error is harmless. See United States v. Thompson, 595 F.3d 544, 548 (2010). Under this inquiry, the Government bears the burden to establish that the error "did not have a substantial and injurious effect or influence on the result and we can say with fair assurance, that the district court's explicit consideration of the defendant's arguments would not have

---

[5] Additionally, not all of the § 3553(a) factors are applicable on review of a revocation sentence, as a district court may not consider (1) whether the revocation sentence "reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense" as discussed in § 3553(a)(2)(A); or (2) whether there are other "kinds of sentences available" as discussed in § 3553(a)(3). See Crudup, 461 F.3d at 439 (internal quotation marks and alterations omitted).

affected the sentence imposed." United Stats v. Boulware, 604 F.3d 832, 840 (4th Cir. 2010) (internal quotation marks and alterations omitted).

## III.

### A.  Reasonableness

We first conclude Appellant's sentence was procedurally unreasonable.[6]  A sentence is procedurally unreasonable when, *inter alia*, the sentencing court fails "to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51.  A district court "need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence, but it still 'must provide a statement of reasons for the sentence imposed.'"  Thompson, 595 F.3d at 547 (quoting Moulden, 478 F.3d at 657).

---

[6] Normally, we review revocation sentences for procedural and substantive reasonableness.  See Crudup, 461 F.3d at 438.  However, because Appellant does not challenge the substantive reasonableness of his sentence, we need only determine whether his sentence was procedurally unreasonable.  Further, our conclusion that Appellant's sentence was procedurally unreasonable moots any consideration of substantive reasonableness.  See United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) ("If, and only if, we find the sentence procedurally reasonable can we 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'") (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

10

Additionally, "'[w]here the defendant or prosecutor presents non-frivolous reasons for imposing a different sentence' than that set forth in the advisory Guidelines, a district judge should address the party's arguments and 'explain why he has rejected those arguments.'" Carter, 564 F.3d at 328 (quoting Rita v. United States, 551 U.S. 338, 357 (2007)). As we held in Carter, "the Supreme Court's recent sentencing jurisprudence plainly precludes any presumption that, when imposing a sentence, the district court has silently adopted arguments presented by a party. Rather, the district judge, not an appellate court, must make an individualized assessment based on the facts presented to him." See Carter, 564 F.3d at 329 (quoting Gall 552 U.S. at 49-50).

Finally, in all sentencing appeals involving an out-of-Guidelines sentence, as we have here, "'the district court must give serious consideration to the extent of the departure or variance, and must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" United States v. King, 673 F.3d 274, 283 (4th Cir. 2012) (quoting United States v. Diosdado-Star, 630 F.3d 359, 365 (4th Cir. 2011)).

Here, Appellant's sentence was procedurally unreasonable because the district court failed to address any of Appellant's specific arguments raised at the second revocation

11

hearing. As noted, at the second revocation hearing, Appellant made several arguments in favor of his proposed sentence, some of which had not been raised at the prior revocation hearing. In particular, at the second revocation hearing, Appellant argued for the first time that (1) he had been actively participating in drug treatment programs; (2) he had obtained a business license to become a handyman and was actively seeking employment; and (3) his initial sentence reduction should not be considered as a reason for imposing a higher revocation sentence because it was not a "break" inasmuch as he had to testify against other gang members in order to earn that reduction.

This is significant because even if we were to accept the Government's argument that we should simply consider the district court's statements from the initial revocation hearing in order to satisfy Carter, we still could not find that the district court explicitly addressed Appellant's arguments as required by Carter. This problem is compounded by the fact that, in this case, Appellant's sentence represented a 150% increase from the top of the revocation sentencing range. As noted, the specificity with which a district court must explain its chosen sentence increases in cases where the district court imposes an above-Guidelines sentence. See King, 673 F.3d at 283. Accordingly, in this case, the district court's sole

explanation, "I think we have done all that we can do for Mr. Fisher" is insufficient to support the sentence imposed.

In response, the Government argues that, because the ultimate sentence imposed fell between the parties' recommended sentences, the district court necessarily considered each of the parties' arguments when fashioning the sentence. However, this argument invites us to do precisely what Carter forbids us to do and to presume that the district court silently considered Appellant's arguments. Accordingly, because the district court did not expressly consider the arguments that Appellant made at the second revocation hearing, Appellant's sentence was procedurally unreasonable.

Having concluded that Appellant's sentence was unreasonable, we must now determine whether it was plainly so. To be plainly unreasonable, a sentence must "run afoul of clearly settled law." Thompson, 595 F.3d at 548. In Thompson, we noted that, since the Moulden decision in 2007, it has been clearly settled in the Fourth Circuit that a district court must explicitly state its reasons for imposing a particular revocation sentence. See Thompson, 595 F.3d at 548 ("We are certain, though, that the district court's obligation to provide some basis for appellate review when imposing a revocation sentence, however minimal that basis may be, has been settled in this Circuit since at least Moulden."). Accordingly, because

13

the district court did not follow this clearly settled law, Appellant's sentence was plainly procedurally unreasonable.

## B. Harmless Error

Finally, the Government contends that any error was harmless because explicit consideration of Appellant's arguments on remand would not alter his sentence. The Government bases this argument on the fact that the district court had signaled its intent to impose a lengthy sentence on Appellant at the first revocation hearing and Appellant's arguments for a reduced sentence at the second revocation hearing were "brief and straightforward." Br. of Appellees 12. We disagree.

As noted, at the second revocation hearing, Appellant made different arguments than he had made at the first revocation hearing. Accordingly, the district court was compelled to address these arguments and provide an "individualized" explanation for its decision to deviate from the Guidelines. Because the district court did not do so, we cannot conclude the error was harmless. See Lynn, 592 F.3d at 582 ("We cannot conclude that this error was harmless. When faced with an unexplained out-of-Guidelines sentence, we have in the past remanded for resentencing because we could not determine why the district court deemed the sentence it imposed appropriate. We see no reason to abandon this approach today.") (internal citations and quotation marks omitted).

14

The Government cites two cases in which we applied harmless error to a procedurally unreasonable sentence where the error was based on a district court's inadequate explanation. See, e.g., United States v. Hernandez-Frias, 475 Fed. App'x 488 (4th Cir. 2012); United States v. Boulware, 604 F.3d 832, 840 (4th Cir. 2010). However, neither of these cases involved an above-Guidelines sentence. This is significant because, as noted, a district court has a heightened burden when explaining an above-Guidelines sentence. Thus, because the district court provided no individualized explanation for its decision to impose an above-Guidelines sentence, we cannot apply harmless error in this instance.

IV.

For these reasons, we vacate Appellant's sentence and remand to the district court for resentencing.

VACATED AND REMANDED

15

SHEDD, Circuit Judge, dissenting:

Javaad Fisher's sentence is procedurally reasonable and, even if it were not, any error is harmless. Accordingly, I respectfully dissent from the majority's decision to vacate his sentence and remand for further proceedings.

In reviewing a sentence imposed for violating supervised release we apply the "plainly unreasonable" standard, United States v. Crudup, 461 F.3d 433, 437 (4th Cir. 2006), and "take[] a more deferential appellate posture concerning issues of fact and the exercise of discretion than reasonableness review for guidelines sentences," United States v. Moulden, 478 F.3d 652, 656 (4th Cir. 2007) (internal quotation marks omitted). Relevant here, the court's statement of reasons "'need not be as specific as has been required' for departing from a traditional guidelines range." Id. at 657 (quoting Crudup, 461 F.3d at 439)). A court is required to "place on the record an 'individualized assessment' based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009).

As the majority recounts, the district court gave an individualized explanation on the record at Fisher's first revocation sentencing hearing, explaining that it would "normally" have sentenced Fisher to the statutory maximum of 60 months imprisonment but, in recognition of his drug problem, the

16

court would give him "an opportunity" to get his "problems solved," therefore only imposing a sentence of 6 months imprisonment. (J.A. 33). The court made clear, however, that "if that doesn't work, if the Probation Officer brings you back in here, I won't have any choice but to send you to jail, and for a long time." (J.A. 34). Fisher failed to heed this advice and after his release he quickly violated his supervised release conditions. At the second revocation hearing, the Government—represented by the same Assistant U.S. Attorney (AUSA) who originally prosecuted Fisher in 2003—pressed for the statutory maximum of 54 months imprisonment,[1] explaining in detail the numerous breaks Fisher had been afforded and his failure to take advantage of the court's repeated leniency. Fisher's arguments in response, made by the same attorney who represented him at the first revocation hearing, were unexceptional and, in substance, no different from those at the first hearing.[2] The

---

[1] At the first hearing, the Government argued for a sentence of nine months imprisonment.

[2] At the first revocation hearing Fisher's attorney focused on Fisher's substance abuse and requested a "more intensive drug treatment program." (J.A. 31). Fisher's attorney noted that Fisher had not had "any major issues" while on supervision and that he was trying to find a job but had been unable to do so. Fisher himself then apologized to his community and his family. At the second hearing, Fisher's attorney argued that Fisher had committed only "technical" violations, had "consistently come to this Court and said, 'I have a drug abuse problem,'" and was attempting to find a job. (J.A. 45-46). Fisher again (Continued)

court then imposed a sentence of 30 months, adding "we have done all that we can do for Mr. Fisher."

In my view, the district court provided an individualized explanation for Fisher's sentence during his sentencing process at the first hearing. At the second hearing, the court simply implemented the sentence it had already promised—and had provided an individualized explanation for—at the first sentencing. The court's words, that it had done all it could for Fisher, indicate that it had given him a break the first time with the promise of a significant sentence if Fisher failed to take advantage of the opportunity. I do not believe Carter requires more, particularly given the more deferential standard we employ in the supervised release context. Here, the same judge, the same AUSA, and the same criminal defense attorney were present at both hearings. In fact, Fisher's attorney admitted at oral argument that she was not surprised that the court imposed this sentence. Therefore, I believe Fisher's sentence is procedurally reasonable and is certainly not "plainly" unreasonable.

---

apologized, claimed he had left his criminal life behind, and mentioned that he wanted to be there for his daughter. While the words may have changed, the substance of Fisher's arguments was the same at both hearings.

Even assuming the district court committed procedural error, any error is harmless. United States v. Boulware, 604 F.3d 832, 838-39 (4th Cir. 2010). Under the harmless error standard, as it applies to procedural sentencing errors, "the government may avoid reversal only if it demonstrates that the error did not have a substantial and injurious effect or influence on the result and we can say with fair assurance that the district court's explicit consideration of [the defendant's] arguments would not have affected the sentence imposed." Id. at 838 (internal quotation marks and alterations omitted). The Government has satisfied that standard here. The same experienced district judge sentenced Fisher in 2004, reduced his sentence in 2005, and handled both revocation hearings. The judge warned Fisher at the first revocation hearing that Fisher would face significant jail time if he violated supervised release again, leaving us with "no doubt" that the court would have imposed the same sentence, particularly given that Fisher's arguments were "very weak." Id. at 839. Remanding this case for further proceedings is a "pointless waste of resources," id. at 840, given that the district court will simply reenter—with an additional paragraph of explanation—the same sentence, "[a] reasonable sentence" that "we would" then "be compelled to affirm." United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011) (internal quotation marks omitted). Clearly,

19

the district judge handled this revocation properly, and I believe quite admirably—stating clearly what he intended to do, but giving the defendant one last chance to correct his behavior. To require the judge to simply restate his clear intention and determination under these circumstances would result in "the empty formality of an unnecessary remand." United States v. Hargrove, 701 F.3d 156, 163 (4th Cir. 2012).

For these reasons, I respectfully dissent.